IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WILLIAM W. BULLINGTON and
RICHARD ANDY SALAS,

      Plaintiffs,

      vs.                                        CIV No. 98-1421 JP/RLP ACE

UNITED STATES POSTAL SERVICE/
UNITED STATES OF AMERICA,
LST-HCB, a joint venture,
LST BUILDINGS, INC., a Minnesota Corp.,
HCB CONTRACTORS LTD., a Texas Limited Partnership,
THE BECK COMPANY, a Texas Corp.,
KACHINA PETROLEUM EQUIPMENT CO., INC.,
a New Mexico Corp., and JOHN DOE,

      Defendants.

## MEMORANDUM OPINION AND ORDER

On March 22, 1999, Defendant United States Postal Service (USPS) filed a Motion to Dismiss For Failure to State a Claim under FED. R. CIV. P. 12(b) (Docket No. 12) together with a supporting Memorandum, Plaintiffs' Response, and Defendant's Reply. After considering these documents and the applicable law, I conclude that Defendant's motion should be granted.

## BACKGROUND

Plaintiffs William W. Bullington and Richard Andy Salas are employees of Tank Management Services (TMS). Defendant hired TMS to test an underground storage tank (UST) containing fuel at the Rio Rancho Post Office after the New Mexico Environment Department

inspected the facility and reported that the line of the UST had never been tested in eight years of operation. State regulations require that such tanks and lines be tested a minimum of once a year. (Complaint ¶ 19.)

On November 22, 1995, Plaintiff Bullington and another employee of TMS tested the tank and discovered no leak. However, they could not test the line. Testing of the line required the removal of the leak detector, but the man-way of the tank had been improperly installed directly on the leak detector, preventing its removal. Bullington and his co-worker discontinued the operation and informed their TMS supervisor that the leak detector could not be removed to test the line. The TMS supervisor in turn discussed the problem with the Postal Service Compliance Officer. The "decision was made to modify" the tank, and the TMS supervisor relayed the decision to Plaintiff Bullington. (Complaint ¶ 25.) Plaintiffs have not alleged who made the decision to modify the tank.

On December 19, 1995, Plaintiff Bullington returned to the UST site with another employee, Plaintiff Salas, to modify the tank according to the TMS supervisor's instruction. While they were modifying the tank, both Plaintiffs were injured by an explosion caused by undetected fumes. (Complaint ¶ 26 and 29). Plaintiffs have sued the USPS under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346, and § 2671 *et seq.*, for injuries they sustained when the tank exploded.

Plaintiffs allege that Defendant failed to inspect and maintain USPS property according to state regulation, failed to properly instruct or warn Plaintiffs about dangerous conditions on the property, and failed to manage and supervise safety at the work place. (Complaint ¶ 3, 19, 29, 31.) Plaintiffs argue that these acts or omissions were the proximate cause or contributory cause

2

of the explosion and their injuries.

Defendant asks the court to dismiss Plaintiffs' claims against the USPS under FED. R. CIV. P. 12(b)(6). Defendant argues that Plaintiffs have failed to state a claim under the Federal Tort Claims Act because they have not alleged any duty owed by Defendant to the Plaintiffs as employees of an independent contractor to whom Defendant had ceded control of the repairs.

**A. Cause of Action Under the Federal Tort Claims Act.**

As a threshold matter, I must determine whether Plaintiffs have stated a cause of action under the FTCA. The FTCA provides that the United States government will be liable for injuries "caused by negligent act or omission of any employee of government while acting within the scope of office or employment, under circumstances where the United States, if a private person, would be liable." 28 U.S.C. § 1346(b). An employee of the government is defined in 28 U.S.C. § 2671 to specifically exclude independent contractors.

According to the facts alleged by Plaintiffs, TMS, their employer, was an independent contractor. Although plaintiffs have not explicitly alleged or denied that TMS was an independent contractor (Response at unnumbered page 3), the hallmark of an independent contractor is its control over the detailed physical performance of the work. *See Lilly v. Fieldstone*, 876 F.2d 857, 858 (10th Cir. 1989). The key inquiry in determining control is whether the owner of the premises supervised the day-to-day operations of the independent contractor. *Id.* Because the testing and modification of the UST was specialized work outside of the USPS's area of expertise, it is probable that Defendant ceded control over the details of performance to TMS. Plaintiffs have not made any allegations to the contrary. Nor have Plaintiffs alleged that USPS

personnel supervised Plaintiffs' work on the UST. Furthermore, Defendant's consultation with TMS and approval of the decision to modify the tank does not necessarily negate TMS's independent contractor status because some control by the premises owner over the means may be necessary to ensure correct performance of the work contracted. *See Curry v. United States*, 97 F.3d 412, 415 (10th Cir. 1996) (owner of premises retains right to inspect work to extent that it is necessary to ensure desire results are achieved); *Flynn v. United States*, 631 F.2d 678, 680 (10th Cir. 1980) (premises owner's retention of a general right to inspect and make safety requirements is insufficient to create an agency relationship).

As employees of an independent contractor, Plaintiffs must allege negligent acts or omissions by a government employee because the FTCA's waiver of sovereign immunity has been strictly construed to preclude suits based on the negligent acts of contractors. *See Curry*, 97 F.3d at 414 (holding that the FTCA does not authorize suits based on acts of independent contractors or their employees); *Laird v. Nelms*, 406 U.S. 797, 799, 92 S. Ct. 1899, 1901, 32 L.Ed. 499 (1972) (holding that the FTCA requires some sort of "misfeasance or nonfeasance" by a government employee).

In accord with the FTCA, Plaintiffs have alleged acts or omissions by the USPS, which include failure to inspect and maintain USPS property, failure to warn Plaintiffs regarding dangerous conditions, and failure to supervise safety at the work place. Provided these alleged facts state a claim for negligence under New Mexico law, Plaintiffs will have stated a claim for relief under the FTCA. *See McKay v. United States*, 703 F.2d 464, 472 (10th Cir. 1983) (holding that state law determines whether a government employee was negligent under the FTCA).

**B. New Mexico Law of Negligence.**

In order to be held liable under the FTCA, the USPS must have breached a duty that is owed to Plaintiffs under New Mexico state law. *Id.* New Mexico courts have recognized two legal duties that might apply in this case. First, when a property owner hires an independent contractor to perform work that is inherently dangerous, New Mexico law imposes a nondelegable duty on the property owner to supervise the work of the independent contractor and to ensure that reasonable safety precautions are taken. *Saiz v. Belen School Dist.*, 113 N.M. 387, 827 P.2d 102 (1992). Second, under New Mexico law of premises liability, an owner or occupant of property has a general duty to prevent harm to business visitors. *Klopp v. Wackenhut*, 113 N.M. 153, 157, 824 P.2d 293, 297 (1992).[1]

**1. "Nondelegable duties"as to Inherently Dangerous Work.**

A property owner who contracts to have inherently dangerous work done retains a nondelegable duty to supervise the work of independent contractors and to ensure that reasonable safety precautions are taken. *See Saiz v. Belen School Dist.*, 113 N.M. 387, 393-395, 827 P.2d 102, 108-110 (1992).

---

[1] Plaintiffs also raised claims of per se negligence on the basis of Defendant's alleged breach of a number of state and federal regulations. These claims have not been addressed for several reasons. First, most of the state regulations cited by Plaintiffs do not appear to mandate safety or maintenance measures whose violation proximately caused Plaintiffs' injuries. Second, to the extent that the regulations are relevant, they do not prescribe a "specific and mandatory" course of action and Plaintiffs have not "alleged facts which support the finding that the government's actions were not grounded in policy." *See Aragon v. U.S.*, 146 F.3d 819, 823, 827 (10th Cir. 1998) (citing 28 U.S.C.A. §§ 2674, 2680(a) (discretionary function exception to liability under the FTCA)). Finally, Plaintiffs did not respond to Defendant's argument that the cited regulations are not directed to the safety of Plaintiffs as a class. Under local rules, failure to argue in response to a motion is deemed to constitute consent to that motion. D.N.M.LR-Civ. 7.5(b).

However, even if it is assumed that breach of this nondelegable duty could subject an agency of the United States government to liability under the FTCA, Plaintiffs still have failed to state a claim under this theory. New Mexico courts have repeatedly held that this nondelegable duty only extends to third parties, not to employees of independent contractors. *See, e.g., New Mexico Elec. Service Co. v. Montanez*, 89 N.M. 278, 281-282, 551 P.2d 634, 637 (1976)*; Stinson v. Berry*,123 N.M 482, 485, 943 P.2d 129, 132 (Ct. App. 1997*)*. As the New Mexico Supreme Court noted in *Montanez*, "[t]he employer generally hires an independent contractor to perform work that he is not equipped or trained to do," and in such a case there is "no reason why the employer should become the insurer of the employees of an independent contractor." *Id.*

Accordingly, the USPS did not have a nondelegable duty to ensure Plaintiffs' safety, and Plaintiffs' claim should be dismissed with prejudice to the extent that it is based on such a duty.

**2. Premises Liability.**

The general duty to prevent harm to business visitors includes two distinct elements. First, there is a duty to warn business visitors about those dangers they will not reasonably know of or discover. *See* U.J.I. 13-1310 N.M.R.A. 1999. Second, there is a duty to provide a safe work place to employees and other business invitees**.** *See* U.J.I. 13-1309 N.M.R.A. 1999. New Mexico courts have recognized that these duties, unlike the nondelegable duty to supervise inherently dangerous work, may extend to independent contractors and their employees. *See Fresquez v. Southwestern Indus. Contractors & Riggers, Inc.*, 89 N.M. 525, 530, 554 P.2d 986, 991 (Ct. App. 1976). However, the duty to contractors is not absolute, and the duty "has been held to vary according to visibility or obviousness of the potential jobsite hazard and according to

6

the degree of control the . . . contractor exercises over the premises or over the details of the work." *Tipton v. Texaco, Inc.*, 103 N.M. 689, 694, 712 P.2d 1351, 1356 (1985).

**a. Duty to Warn.**

Because the duty to warn independent contractors varies according to the visibility or obviousness of the potential hazard, *Id.*, the duty will rarely, if ever, apply to those dangers an independent contractor is hired to repair. Rather, the duty is limited to those "dangers of which the employee might reasonably be expected to remain in ignorance." *Stock v. Grantham*, 125 N.M. 564, 568, 964 P.2d 125, 129 (Ct. App. 1998) (citing *Prosser & Keeton on Torts*, § 80 at 569 (5th ed. 1984)).

For example, in this case Defendant USPS had no duty to warn Plaintiffs about the general flammability of the site. Since TMS and its personnel were presumed to be experts or specialists in the inspection and repair of USTs, Defendant was entitled to rely on Plaintiffs' expertise and had no duty to warn them of obvious dangers intimately connected to the work itself. *See Madrid v. Mine Safety Appliance Co.,* 486 F.2d 856, 862-863 (10th Cir. 1973) (under New Mexico law, duty to warn not extended to employees of independent contractor where contractor had primary responsibility for safety of his employees and had been doing this work for years); *Stock*, 125 N.M. at 568, 964 P.2d at 129 (holding that there was no duty to warn babysitter about dangers of lifting children).

Plaintiffs may be claiming that Defendant had a more specific duty to warn the plaintiffs about latent dangerous conditions created by the lack of yearly inspections and maintenance. However, the Tenth Circuit has rejected a similar argument. In *Parsons v. Amerada Hess Corp.*, decided under New Mexico law, the plaintiffs argued that the owner had superior knowledge of

7

extraordinarily dangerous latent conditions on the premises, so should be under a duty to warn the employees of independent contractors. 422 F.2d 610, 615-616 (10th Cir. 1970). The court held that such a claim was really based on the nondelegable duty of supervision over inherently dangerous work, *not* the duty to warn. It rejected a construction of the duty to warn that would impose liability on a premises owner for physical harm caused to an employee of a contractor by a latent danger incident to the performance of known dangerous work.

Accordingly, the USPS did not have a duty to warn Plaintiffs of the general or specific flammable condition of the work site, and Plaintiff's claim should be dismissed with prejudice to the extent that it is based on such a duty.

### b. Duty to provide a safe work site.

The duty to provide a safe work site to independent contractors and their employees varies according to the degree of control the contractor exerts over the premises or over the details of the work. *Tipton*, 103 N.M. at 694, 712 P.2d at 1356. Thus, New Mexico courts have held that there is no duty owed where the contractor controls either the premises or the work performed. *See Fresquez*, 89 N.M. at 530-531, 554 P.2d at 991-992 (citing *Wolczak v. Nat'l Elec. Products Corp.*, 168 A.2d 412 (N.J. Super. Ct. App. Div. 1961)). However, an owner that retains some control over the premises or work is subject to liability for failure to exercise that control with reasonable care. *See Moulder v. Brown*, 98 N.M. 71, 76, 644 P.2d 1060, 1065 (Ct. App. 1982) (citing Restatement (Second) Torts, § 414).

Because TMS was hired to inspect and modify only the UST, it is clear that Defendant retained control over the Rio Rancho premises in general. Additionally, the premises for which an

8

owner is liable generally includes equipment being worked on or repaired by the employee of the independent contractor, such as the UST in this case. *See Harmon v. Atlantic Richfield Co.*, 95 N.M. 501, 504, 623 P.2d 1015, 1018 (Ct. App. 1981). Nonetheless, "the employee [of an independent contractor] must show that the owner retained at least some *specific control* over the premises during the performance of the work, or over the instrumentality that proximately caused the employee's injury." *See Requarth v. Brophy*, 111 N.M. 51, 54, 801 P.2d 121, 124 (Ct. App. 1990) (emphasis added). Plaintiffs have not clearly alleged that the USPS continued to exercise control over the UST that exploded or over the details of the work on it. TMS was presumably hired as a specialist, which would indicate a lack of USPS control.

A claim for owner control might find support in the fact that Plaintiffs discontinued work when a problem was discovered and in the fact that work was not resumed until after Plaintiffs' supervisor had consulted with the Postal Service Compliance Officer and "the decision was made" to modify the tank. However, "a showing of the right of general superintendence necessary to ensure that the [contractor] performs his agreement" is not sufficient to subject an owner to liability. *Fresquez*, 89 N.M at 532, 554 P.2d at 993. Instead, Plaintiffs must show that the employer retained such control or right of supervision that the independent contractor "was not entirely free to do the work in its own way." *Id.*

Here, Plaintiffs have not alleged sufficient control by Defendant over the work site or performance to establish a duty to Plaintiffs to provide a safe work place. Plaintiffs have not alleged that the decision to modify the tank was made by Defendant. Nor have Plaintiffs alleged that work was discontinued because TMS was without freedom to do the work in its own way. To the extent that Plaintiffs' claims against Defendant are based on a duty to provide a safe work

9

place, they should also be dismissed. However, Plaintiffs should be given leave to amend their complaint to allege specific facts regarding Defendant's control sufficient to state a valid claim of breach of a duty to provide a safe workplace if Plaintiffs can do that consistent with Federal Rule of Civil Procedure 11.

IT IS THEREFORE ORDERED that:

(1) Plaintiffs' claim that Defendant USPS breached a nondelegable duty to supervise Plaintiffs' work and ensure that reasonable precautions were taken, thereby causing injury to Plaintiffs, will be DISMISSED WITH PREJUDICE;

(2) Plaintiffs' claim that Defendant USPS breached a duty to warn Plaintiffs of general or latent hazards at the jobsite, thereby causing injury to Plaintiffs, will be DISMISSED WITH PREJUDICE;

(3) Plaintiffs' claim that Defendant USPS breached a duty to provide Plaintiffs with a safe work place, thereby causing injury to Plaintiffs, is DISMISSED WITHOUT PREJUDICE; and

(4) Plaintiffs may file an amended complaint in accordance with this Memorandum Opinion and Order by August 20, 1998.

_____
UNITED STATES DISTRICT JUDGE